1  Matthew J. Matern (SBN 159798)
   mmatern@maternlawgroup.com
2  Shayna E. Dickstein (SBN 290844)
   sdickstein@maternlawgroup.com
3  MATERN LAW GROUP
   1230 Rosecrans Ave., Ste. 200
4  Manhattan Beach, CA 90266
   Telephone: (310) 531-1900
5  Facsimile: (310) 531-1901

6  Attorneys for PLAINTIFF HUMBERTO TAPIA

7              UNITED STATES DISTRICT COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9

10

11 HUMBERTO TAPIA, an individual,        CASE NO.: 2:14-CV-05163-R-AGR
   and on behalf of himself and all others
12 similarly situated,                   [Assigned for all purposes to Hon.
                                         Manuel L. Real, Courtroom 8]
13         PLAINTIFF,
                                         **CLASS ACTION**
14         v.
                                         **PLAINTIFF HUMBERTO TAPIA'S**
15 MACY'S, INC., a Delaware              **OPPOSITION TO DEFENDANTS'**
   corporation; MACY'S WEST             **MOTION TO COMPEL**
16 STORES, INC., a Delaware              **ARBITRATION AND STAY**
   corporation; BLOOMINGDALE'S,         **PROCEEDINGS**
17 INC., a Delaware corporation;
   BLOOMINGDALE'S INC., d/b/a           [Filed concurrently with the Declaration
18 FORTY CARROTS; and DOES 1            of Plaintiff Humberto Tapia and
   through 100, inclusive,              Declaration of Matthew J. Matern]
19
           DEFENDANTS.                   Hearing Date:  October 20, 2014
20                                       Time:          10:00 a.m.
                                         Courtroom:     8
21
                                         Complaint Filed: April 2, 2014
22                                       Removed:         July 2, 2014
                                         Trial Date:      None Set
23

24

25

26

27

28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

I.    INTRODUCTION AND BACKGROUND.........................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND............................................2

III.  LEGAL ARGUMENT ...................................................................................4

   A.    SUBSTANTIVELY, THE ARBITRATION AGREEMENT IS INVALID ON
        BASIC CONTRACT PRINCIPLES BECAUSE THERE WAS NO MEETING
   OF    THE MINDS BETWEEN THE PARTIES ...................................................4

   B.    THE ARBITRATION AGREEMENT IS UNENFORCEABLE BECAUSE
   THERE IS PROCEDURAL AND SUBSTANTIAL UNCONSCIONABILITY .......5

      1.    The Purposed Agreement is Procedurally Unconscionable............................7
      2.    The Purported Agreement is Substantively Unconscionable .......................11

   C.    THE PURPORTED ARBITRATION AGREEMENT IS UNENFORCEABLE
   AS    TO PLAINTIFF'S PRIVATE ATTORNEY GENERAL ACT CLAIMS .......13

   D.    SHOULD THE COURT ORDER ARBITRATION, BUT KEEP
   JURISDICTION ..OVER THE REPRESENTATIVE PAGA CLAIM, THE COURT
   SHOULD NOT STAY THE REPRESENTATIVE PAGA CLAIM .......................15

CONCLUSION...............................................................................................16

1

## **TABLE OF AUTHORITIES**

2

3 **Cases**

4 *A&M Produce v. FMC Corp.* (1982)
135 Cal.App.3d 473, 486 ...................................................................................7
5
*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000)
6 24 Cal.4th 83, 114 .............................................................................................6

7 *AT&T Mobility, LLC* v. *Concepcion* (2011)
131 S.Ct. 1740.....................................................................................................6
8
*Bustamente v. Intuit, Inc.* (2006)
9 141 Cal.App.4th 199 ..........................................................................................4

10 *Fitz v. NCR Corp.* (2004)
118 Cal.App.4th 702, 721 ...................................................................................8
11
*Harper v. Ultimo* (2003)
12 113 Cal.App.4th 1402, 1406-1407 .....................................................................8

13 *Howard v. Octagon, Inc.* (2013)
2013 U.S. Dist. LEXIS 131366 ..........................................................................9
14
*Iskanian v. CLS Transportation Los Angeles, LLC* (2014)
15 59 Cal.4th 348 ..................................................................................................14

16 *Johnmohammadi v. Bloomingdale's, Inc.*,
755 F.3d 1072 (9th Cir. 2014) ..........................................................................16
17
*Mitri v. Arnel Management Co.* (2007)
18 157 Cal.App.4th 1164, 1173 ............................................................................12

19 *Molina v. Scandinavian Designs, Inc.* (2014)
2014 U.S. Dist. LEXIS 55863 ...........................................................................9
20
*O'Hare v. Municipal Resource Consultants* (2003)
21 107 Cal.App.4th 267, 272 ..................................................................................5

22 *Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (2012)
55 Cal.4th 223, 258 ..........................................................................................12
23
*Pokorny v. Quixtar, Inc.*
24 601 F.3d 987 (9th Cir. 2010), ............................................................................9

25 *Quevedo v. Macy's, Inc*,
798 F.Supp.2d 1122, 1142 (C.D. Cal. June 15, 2011) .....................................15
26
*Samaniego v. Empire Today, LLC*, (2012)
27 205 Cal.App.4th 1138, 1145 ..............................................................................7

28

-ii-

*Sparks v. Vista Del Mar Child & Family Services* (2012)
207 Cal.App.4th 1511, 1523 ...................................................................... 9

*Trivedi v. Curexo Tech. Corp.* (2010)
189 Cal.App.4th 387, 393 ........................................................................... 8

**Statutes**

California Civil. Code § 1580 ...................................................................... 5

California Civil Code § 1670.5 .................................................................... 7

California Code of Civil Procedure § 1281 ................................................ 7

**Other Authorities**

Better Business Bureau ................................................................................ 9

Federal Arbitration Act ............................................................................... 9

**Rules**

American Arbitration Association ("AAA") rules ...................................... 8

Central District Of California Local Rule 7-6 ........................................... 13

-iii-

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND BACKGROUND

Plaintiff Humberto Tapia ("Plaintiff") filed this class action against Defendants Macy's, Inc., Macy's West Stores, Inc., Bloomingdale's, Inc., and Bloomingdale's, Inc., d/b/a Forty Carrots (collectively, "Defendants"), alleging wage and hour claims arising from Mr. Tapia's employment with the Defendants.  Plaintiff brings this action as a putative class and representative action on behalf of similarly situated and aggrieved employees.

Defendants filed a Motion to Compel Arbitration, to dismiss his class and PAGA representative claims, to compel him to arbitrate his individual claims and to stay the case pending his arbitration, claiming that Plaintiff entered into a purported agreement with Defendants that requires all disputes arising out of his employment with Defendants to be submitted to binding arbitration.

Plaintiff contends that the purported Arbitration Agreement ("Arbitration Agreement" or "Agreement") is invalid on basic contract principles, as there can be no meeting of the minds if one party is not afforded the opportunity to review the contract in his primary language.  Plaintiff also argues that the Arbitration Agreement is unenforceable on the grounds of procedural and substantive unconscionability. Defendants did nothing to ensure that their employees would have access to a copy of the relevant rules governing the Agreement, and the Defendant did nothing to provide Plaintiff with access to the Agreement in Spanish.  In addition to engaging in a high degree of procedural unconscionability, the Defendants' Arbitration Agreement is substantively unconscionable based on the fact that it affords employees no opportunity to negotiate the terms of the Agreement.  With respect to his PAGA claims, Plaintiff sustains that, even if he had entered into a valid Arbitration Agreement with Defendants, any provision purporting to waive Plaintiff's

1   representative claims under PAGA would be unenforceable as a matter of state law and

2   contrary to public policy.  However, should the Court choose to order arbitration in

3   this action, Plaintiff asserts that the class as a whole would be substantially prejudiced

4   and harmed if the Court were to stay the representative PAGA claims.

5   **II.    FACTUAL AND PROCEDURAL BACKGROUND**

6          Plaintiff was born and raised in Mexico, and Spanish is his primary language.

7   Declaration of Humberto Tapia ("Plaintiff Decl.") ¶ 2.  The highest level of education

8   that Plaintiff received prior to working for the Defendants was completion of 4th grade

9   in Mexico.  Id.  Plaintiff could only read and speak English at a very basic level when

10  he began working for the Defendants in 2003.  Id.  The employment application that

11  Plaintiff filled out with the Defendants was written in English, and no one translated

12  the application into Spanish for him.  Plaintiff Decl. ¶ 3.  Although Plaintiff was

13  capable of completing basic information on the application form, such as his name and

14  address, he was unable to understand the majority of the application.  Id.

15         Plaintiff worked as a busboy at 59th & Lex Café inside of Bloomingdales, one

16  of the named Defendants, from April 2003 until approximately January 2006.  Plaintiff

17  Decl. ¶ 3.  As a busboy, Plaintiff was not required to speak with any of the restaurant

18  customers in English; Plaintiff's duties were limited to clearing away dirty dishes,

19  setting the tables and serving as an assistant to waiters and waitresses.  Plaintiff Decl. ¶

20  4.

21         In late 2005, Plaintiff began taking English as a Second Language ("ESL")

22  classes at the suggestion of his then-manager, Mr. Bond.  Plaintiff Decl. ¶ 5.  Plaintiff

23  attended ESL classes two times a week over the course of two months.  Id.  Plaintiff

24  enrolled in these classes with the hopes of improving his English skills so that he could

25  receive a promotion from his position as busboy to a position as a waiter, and he also

26  memorized the 59th & Lex Café menu so that he would be able to read it to customers.

27  Id.  Plaintiff was promoted to the positon of waiter for 59th & Lex Café in January of

28

-2-

2006.  Plaintiff Decl. ¶ 6.  As a waiter, Plaintiff was required to stock the service areas, clear the tables and counters, present menus to patrons and answer any questions about menu items, serve food to the patrons, inform the customers of daily specials and prepare checks for the patrons.  Id.  Plaintiff would not have been able to work as a waiter prior to January of 2006 due to his limited ability to speak and understand English.  Id.

Plaintiff does not recall receiving any documents from the Defendants regarding an arbitration agreement or anything related to conflict resolution.  Plaintiff Decl. ¶ 7. Specifically, Plaintiff does not recall ever receiving a document titled Solutions InSTORE – Early Resolution Positive Workplace or any other documents pertaining to the Solutions InSTORE Program.  Id.  When Plaintiff's manager explained the employment application to him, the manager did not discuss or show him any arbitration agreement, conflict resolution agreement, or Solutions InSTORE-Early Resolution Positive Workplace document.  Id.

From the time that Plaintiff began his employment with the Defendants through the end of 2004, Plaintiff changed his place of residence on two occasions.  Plaintiff Decl. ¶ 8, 9.  On both occasions, the Plaintiff provided his updated address to the Human Resources ("HR") of Bloomingdale's.  Id.  Although the Plaintiff does not recall ever receiving an arbitration program and opt-out Arbitration Agreement through the mail by Defendants, the Plaintiff does recall receiving information regarding his 401(k) plan at each of his three places of residence over the course of 2003 to 2004.  Plaintiff Decl. ¶ 10.

During the entire course of his employment with the Defendants, none of the Plaintiff's supervisors at Bloomingdale's ever approached him in person to discuss any arbitration agreement or to provide him with a copy of the American Arbitration Association Rules, the Federal Arbitration Act, or sections of the California Code of Civil Procedure.  Plaintiff Decl. ¶ 11.  Furthermore, the Plaintiff does not remember

-3-

ever attending any in-store informational meetings at which the Solutions InSTORE Program was explained to him.  Id.

Plaintiff filed this putative wage-and-hour class and representative action against Defendants on April 2, 2014 in the Los Angeles Superior Court against Defendants. On July 2, 2014, this action was removed to this Court.  On September 22, 2014, Defendants filed a Motion to Compel Arbitration ("Motion to Compel" or "Motion"), claiming that Plaintiff should be ordered to arbitrate his claim on the grounds that Plaintiff "voluntarily agreed to arbitrate any employment-related disputes he may have with Defendants in accordance with the arbitration component of its Solutions InSTORE Program."  See Defendants' Motion at p. 1.

## III.   LEGAL ARGUMENT

### A. <u>SUBSTANTIVELY, THE ARBITRATION AGREEMENT IS INVALID ON BASIC CONTRACT PRINCIPLES BECAUSE THERE WAS NO MEETING OF THE MINDS BETWEEN THE PARTIES</u>

In order for a contract to be enforceable, there must be a meeting of the minds by both parties at the time of contract formation.  See *Bustamente v. Intuit, Inc.* (2006) 141 Cal.App.4th 199 ("The failure to reach a meeting of the minds on all material points prevents the formation of a contract. . . ."); *see also* Cal. Civ. Code § 1580 ("Consent is not mutual, unless the parties all agree upon the same thing in the same sense.").

The purported Arbitration Agreement at issue in this case is not one where the employee is asked to sign the agreement to consent to its terms.  Rather, the agreement referred to by Defendants employs an "opt-out" procedure.  Here, there was no mutual assent to arbitrate any disputes that arose between Plaintiff and Defendants because Plaintiff was never given the opportunity to review the Arbitration Agreement in his primary language.  Even if the Defendants had sent the Arbitration Agreement to the Plaintiff's updated mailing address, there was nothing that indicated to the Plaintiff

-4-

that he was required to send a form back to the Defendants in order to opt-out of such an Arbitration Agreement.  The one sentence of the Early Dispute Resolution Election Form ("Fall 2003 Election Form") (Ex. F of Coney Decl.) that was written in Spanish merely indicated to Plaintiff that, if he *wanted* to ("Si le gustaría"), he could obtain a copy of *that* document in Spanish; it did not advise Plaintiff that he *should* obtain a copy of the document in Spanish if Spanish was his primary language, and it gave no indication as to what the form was regarding.  Moreover, the Plan Document itself had *nothing in Spanish,* or any language other than English, to indicate to Plaintiff the nature of its contents or even to indicate whether that document was available in Spanish.  Subsequent mailings that were allegedly sent to the Plaintiff also lacked any indication in Spanish that the documents were regarding an arbitration agreement or that he should obtain a copy of the information regarding said agreement in Spanish; moreover, any reference back to the original Plan Document was written only in English.  Therefore, the Arbitration Agreement is invalid as there was no "meeting of the minds" between the parties.

## B. THE ARBITRATION AGREEMENT IS UNENFORCEABLE BECAUSE THERE IS PROCEDURAL AND SUBSTANTIAL UNCONSCIONABILITY

California Code of Civil Procedure § 1281 provides: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."  Therefore, a motion to compel arbitration should be denied if "grounds exist for the revocation of the agreement." *O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 272.

California Civil Code § 1670.5 codifies the common law principle that a court can refuse to enforce an unconscionable contract:

If the court as a matter of law finds the contract or any clause of the contract to

have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may refuse to enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Because the doctrine of unconscionability is a reason for refusing to enforce contracts generally, it is also a valid reason for refusing to enforce an arbitration agreement under Code of Civil Procedure § 1281. *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114. Similarly, the FAA states that agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. 2. The United States Supreme Court, in interpreting this language in the FAA, recognized that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *AT&T Mobility, LLC* v. *Concepcion* (2011) 131 S.Ct. 1740.

Under California law, unconscionability has both a "procedural" and a "substantive" element. *Armendariz,* 24 Cal.4th at 114. The procedural element focuses on oppression or surprise due to unequal bargaining power. *Id; see also A&M Produce v. FMC Corp.* (1982), 135 Cal.App.3d 473, 486. Alternatively, substantive unconscionability concerns overly harsh or one-sided results. *Id.* "Substantive unconscionability focuses on the actual terms of the agreement, while procedural unconconscionability must be present in order for a court to refuse to enforce an arbitration provision based on the doctrine of unconscionability. *Armendariz*, 24 Cal.4th at 114. However, the two elements need not be present in the same degree. Essentially a sliding scale is invoked whereby "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

//

-6-

### 1.  The Purposed Agreement is Procedurally Unconscionable

Plaintiff's limited ability to speak and understand English supports a finding of unequal bargaining power and procedural unconscionability.  *See, e.g., Samaniego*, (2012), 205 Cal.App.4th 1138, 1145 [finding procedural unconscionability where the employer requires an employee, who could not read English and whose first language was Spanish, to sign an arbitration agreement, which was not translated into Spanish, as a condition of employment].  From the time Plaintiff applied for a position with the Defendants, through the entire course of his employment with the Defendants, Mr. Tapia was repeatedly presented with information for which no Spanish translation was available, even though Spanish is Plaintiff's first language.  At the time that Plaintiff was alleged to have attended in-store informational meetings and to have been sent information regarding the Solutions InSTORE program, Plaintiff was only able to speak and read basic words in English.  It was not until January of 2006 that the Plaintiff was able to begin working as a waiter for 59th & Lex Café because of his slightly improved English speaking ability, and even then, the Plaintiff was able to take the waiter position because he had committed the restaurant menu to memory.

Nonetheless, the Defendants did not provide Plaintiff with the opportunity to receive in-person information regarding the Defendants' Solutions InSTORE program, and the only sentence that was written in Spanish in the Fall 2003 mailing, that was sent to the Defendants' employees, failed to even mention that the documents were regarding a binding arbitration agreement that the employees could *only* opt out of if they returned a response.

In addition, Defendants did not provide Plaintiff with a copy of the American Arbitration Association ("AAA") rules, the Federal Arbitration Act ("FAA"), or relevant sections of the Code of Civil Procedure ("CCP"), which allegedly govern the arbitration proceeding.  Although there is some controversy on the issue, numerous courts have held that the failure to provide a copy of the arbitration rules to which the

-7-

employee will be bound supports a finding of procedural unconscionability.  *See Trivedi v. Curexo Tech. Corp.* (2010) 189 Cal.App.4th 387, 393 [arbitration clause procedurally unconscionable where the employee was not given a copy of the AAA rules, which "extend over 26 single-spaced pages"]; *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 721 [arbitration agreement incorporated arbitration rules that were not attached and required the employee to go to another source to learn the full ramifications of the arbitration agreement]; *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1406-1407 [arbitration provision invalid where arbitration rules of Better Business Bureau ("BBB") were not attached to the agreement, which forced the customer to go to another clause, and the clause failed to state whether the arbitration would be conducted under the BBB rules at the time of contracting or at the time of arbitration]; *Sparks v. Vista Del Mar Child & Family Services* (2012), 207 Cal.App.4th 1511, 1523 [finding that a lack of evidence "that the American Arbitration Association rules specified in the arbitration clause were provided to plaintiff" contributed to a showing of unconscionability]; *cf. Howard v. Octagon, Inc.* (2013), 2013 U.S. Dist. LEXIS 131366 [noting that while "some courts have held that failure to provide arbitration rules can be deemed procedurally unconscionable…other cases have held that procedural unconscionability can be avoided if the arbitration rules are incorporated into the contract by reference."]  Although failure to attach the relevant arbitration rules to an arbitration agreement may not in and of itself to demonstrate procedural unconscionability, it may contribute to a showing of unconscionability when taken into account along with other factors.  *See Pokorny v. Quixtar, Inc.* (9th Cir. 2010), 601 F.3d 987; *see also Molina v. Scandinavian Designs, Inc.* (2014), 2014 U.S. Dist. LEXIS 55863.

Notably absent from the Defendants' Motion to Compel Arbitration is any mention of whether the Defendants provided the Plaintiff with access to copies of the AAA rules or the FAA.  The Defendants note that information about the Solutions

-8-

InSTORE Program was added to the company's employee resource website (www.employeeconnection.net) (the "Website" or "Company Website"), but they neglect to mention that the Fall 2003 mailing contained no reference to the website, and the Fall 2003 mailing made no indication as to whether the AAA rules or the FAA were even accessible to employees through the InSTORE Program information contained on the Website.  In her Declaration in support of Defendants' Motion, Coney noted that the Website "contains copies of the Plan Document that employees can download, and contains links to AAA's website," but she did not specify whether and when the employees were put on notice that information regarding the Solutions InSTORE Program was available on the Website.  Coney Decl. at ¶ 53.  Although Ms. Coney noted that the Solutions InSTORE Program was "rolled out" in Fall 2003, she does not specify when any information regarding the Solutions InSTORE Program was in fact placed on the Website.  Coney Decl. at ¶ 15.  The Defendants give no indication that information regarding the Arbitration Agreement was ever made available to their employees *prior to the deadline* given to employees to opt out of the program.

Likewise, the Early Dispute Resolution Brochure ("EDR Brochure") (Ex. B of Coney Decl.) that the Defendants claim to have distributed to all employees in person, in September and October of 2003, makes no mention of any information available to employees through the Company Website.  Thus, even if an employee receiving the Fall 2003 mailing was a native English speaker, and even if that employee had access to a computer and to the internet, that employee would not have known to look at the Website to obtain further information about the Solutions InSTORE Program, let alone information about the AAA rules or the FAA which govern the Defendants' Arbitration Agreement.

In January 2004, the Defendants mailed employees who had not opted out of their Arbitration Agreement a brochure titled, "You're in Good Company." Ex. J of Coney Decl.  Although the brochure stated that a copy of the Plan Document could be

-9-

found on the Company Website, there was no mention made of the fact that the AAA rules, the FAA, or other additional information could be accessed through that Website. As far as the employees were concerned, the brochure merely purported to inform them that a duplicate copy of the document, which they had already received in the mail, could be accessed through the Company Website. Moreover, the EDR Brochure at no point suggests that the employees still had an option to opt out of the arbitration agreement. In fact, the EDR Brochure explicitly states that the *only* two times at which an employee could "decide whether [he or she] want[s] to receive the benefits of all four steps of [the Solutions InSTORE] program" would be during the "enrollment period" of an unspecified date, or 12 months following the initial choice to participate in the program. Ex. B p. 10. Thus, even if the employees *had* been provided with access to the AAA rules and the FAA in the January 2004 mailing, they were presumably already bound by the terms of the arbitration agreement.

According to the Defendants, their Fall 2004 mailing included a brochure titled, "We've Got You Covered" (Ex. L of Coney Decl.), a new Election Form ("2004 Election Form") (Ex. N of Coney Decl.) and a newsletter titled "Opening the Door to More Information" (Ex. M of Coney Decl.). The brochure and the 2004 Election Form indicated to employees that "detailed information [about the program], including a copy of the Plan Document," could be found on the Solutions InSTORE website; the Fall 2004 would thus mark the first instance in which the Defendants made any suggestion that additional information regarding their Solutions InSTORE program could be located on their Website. Ex. L at Coney Decl. at p. 78; Ex. N.

At no point in any of the Defendants' mailings or in-store handouts do the Defendants instruct their employees to go to the company Website to find a link to additional information regarding the AAA rules, the FAA or the California Rules of Civil Procedure. Even if the Defendants *had* provided such information, these instructions would have required employees to go through a multi-step process just to

-10-

be directed to other, external websites with the relevant information regarding these rules and procedures.  Since the Defendants did not attach copies of all pertinent documents to the Plan Document that was provided to employees, and because employees were not instructed or directed to these documents by other means, the Court should find that Defendants engaged in a high degree of procedural unconscionability in its mailing and provision of the purported Arbitration Agreement.

## 2.  The Purported Agreement is Substantively Unconscionable

Substantive unconscionability focuses on overly harsh or one-sided results.  *Armendariz*, 24 Cal.4th at 114.  The appropriate inquiry in determining whether an arbitration clause is substantially unconscionable "is whether the arbitration clause is unreasonably one-sided in favor of the party imposing the arbitration."  *Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (2012) 55 Cal.4th 223, 258.  The court "cannot and will not create a term of a contract between the parties that the evidence does not show was ever agreed upon by the parties."  *Mitri v. Arnel Management Co.* (2007), 157 Cal.App.4th 1164, 1173 (finding that "the trial court did not err by denying defendants' motion to compel arbitration" when the documents taken as a whole did not constitute an arbitration agreement.)  Under the sliding scale approach adopted by *Armendariz*, only a minimal amount of substantive unconscionability must be established given the strong indicia of procedural unconscionability in this case.  *Armendariz*, 24 Cal.4th at 114.

"Factual contentions involved in any motion and opposition to motions shall be presented, heard, and determined upon declarations and other written evidence (including documents, photographs, deposition excerpts, etc.) ***alone***."  Local Rule 7-6 (emphasis added).  In looking at the substance of the Defendants' Plan Document, which was submitted to the Court as Exhibit A of the Declaration of Erin Coney in its Motion to Compel, there is clearly language that is missing from the Document that would be necessary to show that the Document was not substantively unconscionable.

-11-

In Exhibit A, there is no text contained on pages 2 or 20, and half of the text on pages 4, 6, 8, 10, 12, 14, 16 and 18 is cut off.  In this incomplete exhibit, there is no evidence that the Document "require[d] a written award," which is necessary for an arbitration agreement to be substantively conscionable. *Armendariz*, 24 Cal.4th at 102.  Therefore, the Defendants have not provided the Court with sufficient evidence to prove that the Plan Document is not substantively unconscionable or oppressive.

Moreover, it is not even clear, in the Defendants' exhibits, whether the Plan Document was sent together with the Fall 2003 Election Form (Ex. F of Coney Decl.) in the first mailing.  Although the Defendants' Motion alleges that the Plan Document was sent together with the Fall 2003 Election Form, there is no date on the Plan Document to indicate when it was sent to the Defendants' employees.  Moreover, the "return by" date listed on the Election Form, October 31, 2003, is insufficient evidence of when the form was actually sent.  The generic, postage-paid envelope that was attached to the Defendants' Motion (Ex. G of Coney Decl.) was included as evidence for both the Fall 2003 mailing and the Fall 2004 mailing.  Thus, the envelope itself only goes to show that the Defendants paid for return postage; it does not give any indication of when the mailings were actually sent to the Defendants' employees.  For its Fall 2004 mailing, the Defendants acknowledge that they did not send their employees a copy of the Plan Document; employees of the Defendants were merely directed to the company website to access the Document.  An employee without access to the internet or to a computer would not have been able to review the terms and conditions contained in the Document upon receiving the Fall 2004 mailing.

Since there is no evidence that the Plan Document and the Fall 2003 Election Form were sent to employees as part of the same document, the Defendants cannot show that there was a lack of substantive oppression, since a failure to provide employees with all relevant documents and an opportunity to review or negotiate these documents tends to show that the negotiation of the arbitration agreement was one-

-12-

sided.  The Arbitration Agreement does not provide for Defendants to sign or initial it, and Defendants did not in fact sign or initial it.  Thus, the Agreement does not even indicate that Defendants themselves assented to the arbitration provisions.  Since only Plaintiff is required to agree or opt out of the terms of this Arbitration Agreement, the Agreement is clearly one-sided.

Even if the employees had received the Plan Document together with the Election Form, the employees were given no opportunity to discuss the terms of the Document with their employer.  Although employees were directed to speak with their supervisors if they had any questions about the information provided to them, there was no indication that the employees could have had any control over the terms of the Document itself.  Consequently, the one-sided nature of the Arbitration Agreement supports a showing of substantive unconscionability.

## C. <u>THE PURPORTED ARBITRATION AGREEMENT IS UNENFORCEABLE AS TO PLAINTIFF'S PRIVATE ATTORNEY GENERAL ACT CLAIMS</u>

On June 23, 2014, the California Supreme Court issued its ruling in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, expressly holding that an employment agreement purporting to compel the waiver of representative claims under the PAGA is contrary to public policy and unenforceable as a matter of state law.  The Court "conclude[d] that California's public policy prohibiting waiver of PAGA claims, whose sole purpose is to vindicate the Agency's interest in enforcing the Labor Code, does not interfere with the FAA's goal of promoting arbitration as a forum for private dispute resolution." *Id* at 348-39.  Therefore, Plaintiff could not have waived his right to pursue his PAGA claim in court.

Nonetheless, the Defendants argue that Plaintiff's PAGA claims fall within the scope of the Defendants' purported arbitration agreement and must be arbitrated on an individual basis, alleging that "*Iskanian* flatly violates two fundamental tenets of the

-13-

FAA—that arbitration agreements must be enforced 'according to their terms' and that the FAA preempts any state law that frustrates, obstructs or impedes enforcement of an arbitration agreement according to its terms."   Defendants' Motion at p. 22. Essentially, the Defendants are arguing that *Iskanian*, the most recent California Supreme Court ruling on the subject, is bad law, and the Defendants ask the Court to instead adhere to the 2011 case *Quevedo v. Macy's, Inc.*, where a federal judge found that the plaintiff's PAGA claim was arbitrable.   *Quevedo*, 798 F.Supp.2d 1122, 1142 (C.D. Cal. June 15, 2011).   Plaintiff submits that the older federal case law cannot be considered in isolation of the recent *Iskanian* ruling, which may apply to PAGA claims at both the state and federal levels.

Alternatively, the Defendants argue that the facts in this matter are distinguishable from those in *Iskanian* given that *Iskanian* contemplated a mandatory, rather than a voluntary, arbitration agreement.   Defendants' Motion at p. 24.   As previously noted, the Plaintiff would contend that a procedurally unconscionable arbitration agreement is not in fact "voluntary."   Since there is a dispute as to whether the Plaintiff was given fair notice of the Plan Document and a meaningful opportunity to review the terms of the Document and any corresponding AAA rules, the Plaintiff maintains that *Johnmohammadi v. Bloomingdale's, Inc.*, which is cited to by the Defendants, is not applicable here.   *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072 (9th Cir. 2014).   Even if the purported arbitration agreement was not presented to the Plaintiff "as a condition of employment," as was the case in *Johnmohammadi*, the Plaintiff was not "fully informed about the consequences" of electing not to opt out of the Plan Document that was ostensibly provided to him.   *Id* at p. 1075.   Therefore, the Plaintiff respectfully requests that the Court adhere to the recent findings in *Iskanian* and find any arbitration agreement unenforceable as to the Plaintiff's PAGA claims.

//

//

-14-

### D. SHOULD THE COURT ORDER ARBITRATION, BUT KEEP JURISDICTION OVER THE REPRESENTATIVE PAGA CLAIM, THE COURT SHOULD NOT STAY THE REPRESENTATIVE PAGA CLAIMS

If the Court is inclined to grant Defendants' Motion and compel Plaintiff to arbitration, Plaintiff respectfully requests that the Court allow his class and representative claims to go forward simultaneously with the arbitration. Staying class proceedings would prejudice the class. Arbitration proceedings often take years, and in that time, crucial evidence is lost and class members become difficult to contact. Declaration of Matthew J. Matern ("Matern Decl.") ¶ 3, 4.

If the court determines that Plaintiff is compelled to arbitrate his claims, and stays class claims pending arbitration, the class will be substantially prejudiced and harmed. Arbitration proceedings are rarely expeditious and can take as many as 2-3 years before an arbitration is completed. Matern Decl. ¶ 3. In addition, the appeal process of a judgment following an arbitration is likely to take 2 years or more, given my experience of filing over 30 appeals. Id. If the Court determines that Plaintiff is compelled to individually arbitrate his claims, and stays his representative claims pending arbitration, the State of California will suffer substantial prejudice. Matern Decl. ¶ 4. Should the PAGA representative action be stayed, the claims of the similarly situated individuals are likely to be adversely affected, because Plaintiff's counsel will not have their names and contact information until discovery on the PAGA representative claims commence. Id. These similarly situated individuals may relocate, move, and may be difficult or impossible to contact. Id. The State of California will suffer prejudice, as the likelihood of recovery of PAGA penalties will be dramatically reduced if discovery of the PAGA claims is not allowed to commence immediately. Matern Decl. ¶ 4. The ability to recover PAGA penalties on behalf of the State of California will be impaired if the case is stayed pending the outcome of this

-15-

litigation.   Id.   The amount of money that the State of California has collected in PAGA penalties is substantial; to date, the State has collected approximately $30,000,000 through the prosecution of PAGA claims under the statute.   Matern Decl. ¶ 5.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Compel Arbitration in its entirety.   Moreover, Plaintiff respectfully requests that this Court deny Defendants' Motion with regard to compelling the PAGA claims to arbitration.

DATED: October 1, 2014                              Respectfully Submitted,

                                                    MATERN LAW GROUP


                                            By:    /s/ Matthew J.  Matern
                                                   _____

                                                   Matthew J. Matern
                                                   Shayna E. Dickstein

                                                   Attorneys for PLAINTIFF HUMBERTO
                                                   TAPIA, on behalf of himself and all
                                                   others similarly situated